**RAINES FELDMAN LITTRELL LLP**
Hamid R. Rafatjoo, State Bar No. 181564
*hrafatjoo@raineslaw.com*
Kyra E. Andrassy, State Bar No. 207959
*kandrassy@raineslaw.com*
1900 Avenue of the Stars, 19th Floor
Los Angeles, CA 90067
Telephone:   (310) 440-4100
Facsimile:   (310) 691-1367

Counsel for Reliant Life Shares, LLC, Debtor and
Debtor-In-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re: | Case No: 1:24-bk-11695-MB |
| RELIANT LIFE SHARES, LLC, a California limited liability company, | Chapter 11 |
| Debtor and Debtor-in-Possession. | **SECOND AMENDED CHAPTER 11 PLAN OF LIQUIDATION** |

SECOND AMENDED PLAN

**TABLE OF CONTENTS**

I.      EXECUTIVE SUMMARY ...........................................................................1

II.     THE PLAN....................................................................................................1

        A.      The Plan Provides for the Liquidation of the Debtor ...................1

        B.      What Creditors and Interest Holders Will Receive Under the Plan ...............2

        C.      Allowance and Treatment of Unclassified Claims.........................2

                1.      Administrative Claims.........................................................3

                        a.      Administrative Claims Other Than Professional Fee
                                Claims.........................................................................3

                2.      Professional Fee Claims ......................................................3

                3.      Priority Tax Claims ..............................................................4

        D.      Allowance and Treatment of Classified Claims and Interests .......5

                1.      Summary of Classes .............................................................5

                2.      Secured Claims Other Than the Cooper Secured Claim
                        (Class 1a)..............................................................................6

                3.      Allowed Secured Claim of the Cooper Parties (Class 1b) .................7

                4.      Other Priority Claims (Class 2)...........................................8

                5.      General Unsecured Claims Filed by Investors with Active
                        Positions (Class 3a) .............................................................8

                6.      General Unsecured Claims (Class 3b) .................................9

                7.      General Unsecured Claims Unrelated to Active Positions or to
                        Forfeited Positions (Class 3c) .............................................9

                8.      Subordinated General Unsecured Claims (Class 3d) .......10

                9.      Equity Interests (Class 4) ...................................................10

        E.      Means for Implementation of the Plan.........................................11

                1.      The Liquidating Trust...........................................................11

                        a.      Establishment of the Liquidating Trust.................11

                        b.      Purpose of the Liquidating Trust...........................11

                        c.      Transfer of Property to the Liquidating Trust .......11

                        d.      Substitution in Litigation and Authority to Resolve
                                Actions ...................................................................12

                        e.      Securities Exempt...................................................12

                        f.      Governance of the Liquidating Trust .....................12

                        g.      Rights, Powers, and Privileges of the Liquidating
                                Trustee....................................................................13

                        h.      Agents and Professionals .......................................14

                        i.      Investment and Safekeeping of Plan Assets..........14

                        j.      Limitations on the Liquidating Trustee..................14

i

k.    Bankruptcy Court Approval of Liquidating Trustee
Actions ...............................................................15

l.    Preservation of Privilege ......................................15

m.    No Bond ................................................................15

n.    Grantor Trust........................................................15

o.    Amendment of the Liquidating Trust Agreement................16

p.    Removal or Resignation of the Liquidating Trustee ...........16

2.    Pooling of the Life Settlement Policies in the New Trust...............17

3.    Dissolution of the Committee ...........................................17

4.    Release of Liens ...............................................................17

5.    Cancellation of Claims, Interests and Obligations ...........................18

6.    Liability of Grady and Michaels for Claims Not Paid in
Full Under the Plan ..........................................................18

7.    Exemptions for Certain Taxes.............................................18

8.    Distribution Rights ............................................................19

9.    Corporate Authority; Further Transactions .....................................19

F.    Procedures For Resolving Disputed Claims.........................................21

1.    General Provisions ..............................................................21

2.    No Distribution Pending Allowance ................................................22

3.    Reserves for Disputed Claims ...........................................23

4.    Claims Paid by Third Parties............................................23

G.    Distributions ......................................................................23

1.    Distributions for Claims Allowed as of the Effective Date..............23

2.    Distributions for Claims Allowed After the Effective Date............24

a.    Payments and Distributions on Disputed Claims.................24

b.    No Distributions to Holders of Disputed Claims .................24

3.    Delivery of Distributions; Undeliverable or Unclaimed
Distributions ...........................................................24

a.    Delivery of Distributions in General ...................................24

b.    Undeliverable Distributions ........................................24

c.    Distributions of Unclaimed Property ...................................25

4.    Compliance with Tax Requirements/Allocations .........................25

H.    Treatment of Executory Contracts and Unexpired Leases...........................26

1.    Assumption of Executory Contracts and Unexpired Leases............26

2.    Rejection of Other Executory Contracts or Unexpired Leases ........26

I.    Preservation of Causes of Action and Avoidance Actions .........................27

J.    Retention of Jurisdiction .................................................................28

III.    EFFECT OF CONFIRMATION OF THE PLAN; OTHER PROVISIONS ...........29

ii

1.    Binding Nature of Plan.................................................................29
2.    Discharge......................................................................................29
3.    Injunction .....................................................................................29
4.    Exculpation...................................................................................30
5.    Limitation of Liability .................................................................30
6.    Amendment or Modification of the Plan......................................31
7.    Controlling Interpretation.............................................................31
8.    Submission of Post-Confirmation Reports...................................32
9.    Quarterly Fees .............................................................................32
10.   Post-Confirmation Conversion/Dismissal....................................32
IV.    CONCLUSION ........................................................................................33
**TABLE OF DEFINITIONS** ......................................................................34
A.    Definitions.....................................................................................34
B.    Rules of Construction....................................................................44
C.    Rules of Interpretation...................................................................44

SECOND AMENDED PLAN

Reliant Life Shares, LLC, as the debtor and debtor-in-possession in the above-captioned bankruptcy case (the "**Debtor**"), hereby submits this *Second Amended Chapter 11 Plan of Liquidation* (the "**Plan**").[1]

## I.    EXECUTIVE SUMMARY

The Plan provides for the winding down of the Debtor, which will place its assets in a Liquidating Trust on the Effective Date with a Liquidating Trustee to be designated prior to Plan confirmation.  On the Effective Date, the Life Settlement Policies within the New Trust will be pooled and the sub-trust structure eliminated so that Investors with Active Positions maintain the same amount of death benefits they held under the prior structure, but spread across a pooled portfolio of Life Settlement Policies held by the New Trust.

All assets of the Debtor, including Residual Interests and Estate Claims, will vest in the Liquidating Trust on the Effective Date and creditors holding Allowed claims will receive a pro rata beneficial interest in the Liquidating Trust equal to the amount of their Allowed claim.  The Liquidating Trustee shall be responsible for the liquidation of the Debtor's assets and the prosecution of Estate Claims, with the net proceeds from these assets to be used to make Distributions to Holders of Allowed Claims as set forth in the Plan.  The Debtor submits that the Plan is in the best interests of all creditors and Investors and is the best option available under the circumstances.  The Debtor urges all eligible creditors to vote to ACCEPT the Plan.

## II.    THE PLAN

### A.    The Plan Provides for the Liquidation of the Debtor

The Plan is a liquidating plan and provides for all Assets of the Debtor to vest in the Liquidating Trust and be administered by the Liquidating Trustee for the benefit of Holders of Allowed Claims as set forth in the Plan.  On the Effective Date, all Plan Assets will be vested in the Liquidating Trust.  Plan Assets do not include the pooled Life Settlement Policies.

---

[1] Capitalized terms shall have the meaning given to them in the attached Table of Definitions.

1

**B.**      <u>**What Creditors and Interest Holders Will Receive Under the Plan**</u>

After the Effective Date, the Liquidating Trustee will prosecute the Estate Claims and liquidate the other Plan Assets and will reconcile and make Distributions to Holders of Allowed Claims in accordance with the Plan. Creditors with Allowed Claims in Classes 1a, 1b, 3b, 3c, and 3d will receive beneficial interests in the Liquidating Trust equal to the Allowed amounts of their Claims. All Distributions to the Holders of Allowed Claims will be made by the Liquidating Trustee from Plan Assets. No Distributions will be made to the Holders of any Disputed Claims unless and until they become Allowed Claims.

On the Effective Date, the sub-trust structure of the New Trust will be eliminated and all of the Life Settlement Policies pooled, with Investors with Active Positions, including those with Allowed Class 3a General Unsecured Claims, holding a beneficial interest in the New Trust that is equal to the same amount of death benefit that they held in the sub-trust structure. However, rather than owning a fractional beneficial interest in a sub-trust that owns one policy, they will hold a fractional beneficial interest in the New Trust that holds the pooled Life Settlement Policies. Investors with Active Positions will receive their pro rata share of death benefits as each of the pooled Life Settlement Policies matures. The Liquidating Trustee will exercise the rights of the grantor under the Original Trust agreement and the New Trust Agreement.

As required by the Bankruptcy Code, the Plan classifies Claims and Interests in various Classes according to their right of priority. The Plan states whether each Class of Claims or Interests is impaired or unimpaired. The Plan provides the treatment each Class will receive. In no event shall any creditor receive more than the creditor's Allowed Claim.

**C.**      <u>**Allowance and Treatment of Unclassified Claims**</u>

Certain types of claims are not placed into voting classes; instead, they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Debtor has not placed the following claims in a class:

SECOND AMENDED PLAN

**1.    Administrative Claims**

Administrative Claims are Claims allowed and entitled to priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code.  The Bankruptcy Code requires that all such Claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

**a.    Administrative Claims Other Than Professional Fee Claims**

All Holders of Administrative Claims other than Professional Fee Claims shall File a Request for Payment of such Claim no later than thirty (30) days after the Effective Date, except that (a) no such Request for Payment need be filed by the OUST, and (b) subject to the prior written consent of the Liquidating Trustee, a Request for Payment need not be filed for any Administrative Claim arising in a transaction with the Debtor after the Petition Date and documented by an invoice submitted in the ordinary course prior to the Effective Date.  Each such request must set forth the amount of, and basis for, such Claim together with supporting documentation.

The deadline for the Liquidating Trustee to object or otherwise respond to any Request for Payment filed after the Effective Date, whether styled as a Motion or otherwise, and whether or not calendared for hearing by the Holder, shall be the Claim Objection Deadline.  Any party-in-interest, including, but not limited to, the Liquidating Trustee, may file an objection to such a request for payment within the time provided by the Bankruptcy Rules or within any other period the Bankruptcy Court establishes.  Persons holding Administrative Claims who do not timely file and serve a request for payment will be forever barred from asserting these Claims or sustaining any action seeking payment in any forum or from any court deriving from these Claims against the Estate, the Debtor, the Liquidating Trust, the New Trust, or their respective assets.

**2.    Professional Fee Claims**

Professional Fee Claims are Claims pursuant to sections 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on the Estate's behalf, or are allowable pursuant to sections 503(b)(3)(D), 503(b)(3)(E) or 503(b)(4) of the Bankruptcy Code. Any such Claims that are or become Allowed shall be paid in full and in Cash on or before the later of (i) the Effective Date; or (ii) 7 days after such Claim becomes an Allowed Claim; that any Holder

3

of any such Claim may agree to different and less-favorable treatment of such Claim. except as may be otherwise agreed by the Holder of such Claim.

The Debtor projects approximately $2,162,000 of unpaid Professional Fee Claims for estate professionals as of the Effective Date, consisting of the following:

- a Claim by Raines Feldman Littrell LLP, general bankruptcy counsel for the Debtor, in the approximate amount of $700,000.
- a Claim by Force Ten Partners, LLC, for providing the advisory personnel and the chief restructuring officer of the Debtor, in the approximate amount of $680,000.
- a Claim by Golden Goodrich LLP, counsel to the Committee, in the approximate amount of $600,000.
- a Claim by Stretto, Inc., as the claims, noticing and solicitation agent for the Debtor, in the approximate amount of $182,000.

In addition, the Receiver and his professionals have filed claims under 11 U.S.C. § 503(b)(3)(E) for the following amounts: (1) $743,948.63 for the Receiver; (2) $685,051.31 for his counsel, Womble Bond Dickinson (US) LLC; (3) $324,769.92 for his counsel, the Law Offices of Elizabeth J. Campbell, APC; and (4) $85,311.11 for local counsel Levene, Neale, Bender, Yoo & Golubchik LLP.

All final applications for payment of any Professional Fee Claim shall be Filed or before thirty (30) days after the Effective Date (or such further date if extended by Court order), and any objections to such application shall be Filed as noted in the notice of the hearing on such applications. All such applications and objections shall comply with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, Local Rules, and applicable Orders of the Bankruptcy Court. Persons holding Professional Fee Claims who do not timely file and serve an application for allowance and payment will be forever barred from asserting these Claims against the Estate, the Debtor, the Liquidating Trust, the New Trust, or their respective assets.

**3. Priority Tax Claims**

Priority Tax Claims consist of certain unsecured employment or other taxes as set forth in section 507(a)(8) of the Bankruptcy Code. Any such Claims that are or become Allowed shall be

4

paid in Cash in equal quarterly installments such that the Claim is paid in full by the date that is five (5) years from the Petition Date, and with interest on any unpaid balance from and after the Effective Date at the rate required by section 511 of the Bankruptcy Code to provide "present value" of such Allowed Claim.  The Debtor shall have the right to prepay any Allowed Priority Tax Claim in full at any time and without penalty or fee, in its sole and absolute discretion.

The Debtor is continuing to review and reconcile its books and records with the filed Priority Tax Claims, for which the bar date has already passed.  However, based on the filed Claims, the Debtor projects not more than $29,000 of Priority Tax Claims, including all obligations to the Internal Revenue Service, the California Employment Development Department, the Franchise Tax Board, and Los Angeles County.

### D.      Allowance and Treatment of Classified Claims and Interests

#### 1.      Summary of Classes

As required by the Bankruptcy Code, the Plan places Claims and Interests into various Classes according to their right to priority and other relative rights.  The chart below lists Classes of Claims and Interests established under the Plan and indicates whether the Class is impaired or unimpaired by the Plan.  A Class is unimpaired if the Plan leaves unaltered the legal, equitable, and contractual rights to which the holders of Claims or Interests in the Class are entitled, with limited exceptions.

| Class | Description | Status | Estimated Amount of Allowed Claims | Projected Recovery |
|---|---|---|---|---|
| 1a | Secured Judgment Lien Claims of E Substance and Mikhail Finkelbaum | Unimpaired | $71,231.87, plus post-judgment interest, if allowed | 100% |
| 1b | Allowed Secured Claim of the Cooper Parties | Impaired (Entitled to Vote) | $4,534,558.73 | 100% |
| 2 | Other Priority Claims | Unimpaired (Deemed to Accept) | $0.00 | 100% |
| 3a | Allowed General Unsecured Claims filed by Investors related to Active Positions in the Original Trust or the New Trust, including those with a beneficial interest in the sub-trust that held matured life insurance policy LH6768 who were active | Impaired (Entitled to Vote) | $53,800,000 | 100% |

5

| Class | Description | Status | Estimated Amount of Allowed Claims | Projected Recovery |
|---|---|---|---|---|
| | as of the Effective Date and stay current/active after the Effective Date. | | | |
| 3b | Allowed Unsecured Claim of the Cooper Parties | Impaired (Entitled to Vote) | $5,000,000 to $10,000,000, depending on the solvency of the Estate | 0.0% - Unknown |
| 3c | All General Unsecured Claims unrelated to either Active Positions in the Original Trust or the New Trust or to Forfeited Positions in the Original Trust or the New Trust and who, if they are held by an Investor or Former Investor, elected on their ballot to assign their Personal Claims to the Liquidating Trust.  Class 3c includes any Claims based on allegations of fraud by the Debtor if the Investor or Former Investor elects on their ballot to assign their Personal Claims to the Liquidating Trust. | Impaired (Entitled to Vote) | $5,000,000 to $7,000,000 | 0.0% - Unknown |
| 3d | Subordinated Claims of Investors (a) who Hold Pre-Effective Date Forfeited Positions or Post-Effective Date Forfeited Positions, or (2) would otherwise hold a Class3c General Unsecured Claim but who declined to elect on their ballot to assign Personal Claims to the Liquidating Trust | Impaired (Entitled to Vote) | TBD | 0.0% - Unknown |
| 4 | Equity Interests | Impaired (Deemed to Reject) | N/A | 0% |

**2.      Secured Claims Other Than the Cooper Secured Claim (Class 1a)**

(a)      Class 1a consists of all Secured Claims other than the Cooper Secured Claim.  The only Secured Claims that the Debtor is aware of are two judgment lien claims where the judgment

6

SECOND AMENDED PLAN

creditors did not file a Proof of Claim.  Notwithstanding that, to the extent that the judgments remain unsatisfied, the lien claimants have a lien against accounts receivable and tangible chattel paper, if any, under California Code of Civil Procedure § 697.530.

(b)    Except to the extent that a Holder of a Class 1a Secured Claim agrees to less favorable treatment, on the Effective Date or, if an action to void their lien is pending as of the Effective Date, the date that any action seeking to void their lien is resolved by a Final Order, the Holder of a Class 1a Secured Claim will receive in full and final satisfaction, settlement, release and discharge of such Claim, payment in full and in Cash of the unpaid portion of such Claim, including any interest thereon required to be paid under section 506(b) of the Bankruptcy Code, up to the value of the collateral securing such Claim as of the Petition Date.  To the extent the collateral securing a Class 1a Secured Claim is not sufficient to pay the Claim in full, the balance of the claim shall be treated as a Class 3c General Unsecured Claim.

(c)    Class 1a is unimpaired and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Class 1a are not entitled to vote to accept or reject the Plan.

**3.    Allowed Secured Claim of the Cooper Parties (Class 1b)**

Pursuant to the Cooper Stipulation, the Class 1b Secured Claim of the Cooper Parties is allowed in the amount of $4,534,558.73, which takes into account the payment previously made. On the Effective Date, the Cooper Parties shall receive a pro rata share of the beneficial interest in the Liquidating Trust in full satisfaction, settlement, discharge, and release of, and in exchange for its Allowed Secured Claim.  Pursuant to the Cooper Stipulation, the Cooper Parties will split Excess Cash equally with the Liquidating Trust until $5 million has been paid on the Allowed Class 1B Secured Claim of the Cooper Parties.  Payments on the Class 1b Secured Claim will be made each time the Estate accumulates $250,000.00 of Excess Cash, which Excess Cash shall be split equally between the Allowed Class 1B Secured Claim and the Liquidating Trust.  The Estate and the Liquidating Trust reserve all contribution claims against co-obligors under the Cooper Judgment.

SECOND AMENDED PLAN

**4.**     **Other Priority Claims (Class 2)**

(a)     Class 2 consists of any Other Priority Claims, which are Claims entitled to priority pursuant to section 507(a) of the Bankruptcy Code that are not Priority Tax Claims.  For the avoidance of doubt, the Debtor believes that there are no Other Priority Claims because, among other things, the Debtor did not have any employees during the 180 days prior to the Petition Date, and therefore no Persons may assert any Claim entitled to priority under sections 507(a)(4) or 507(a)(5) of the Bankruptcy Code.  However, out of an abundance of caution, the Plan provides for a Class of such Claims and with treatment as required by the Bankruptcy Code.

(b)     Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the later of the Effective Date or the date such Claim becomes Allowed (or the due date of such Claim in accordance with its terms), in full and final satisfaction, settlement, release and discharge of such Claim, the Holder shall receive, payment in full and in Cash of the unsatisfied amount of such Claim.

(c)     Class 2 is unimpaired and is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Claims in Class 2 are not entitled to vote to accept or reject the Plan.

**5.**     **General Unsecured Claims Filed by Investors with Active Positions (Class 3a)**

(a)     Class 3a consists of all General Unsecured Claims filed by Investors related to Active Positions in the Original Trust or the New Trust, including those with a beneficial interest in the sub-trust that held matured life insurance policy LH6768 who were active as of the Effective Date and remain active/current after the Effective Date.

(b)     As set forth below, on the later of January 1, 2026, or the Effective Date, the Life Settlement Policies shall be pooled within the New Trust and each Holder of an Allowed Class 3a Claim who holds an Active Position on the Effective Date shall be allocated the same amount of death benefit that they held as of the Effective Date or the date of maturity of policy LH6768, as applicable, as a beneficiary of the New Trust.  If they continue to pay premiums and their allocation of an administrative fee, then they will receive their pro rata share of the death benefits as the Life

8

Settlement Policies mature.  This will be in full and final satisfaction, settlement, release and discharge of such Claim.  Holders of Class 3a Claims may elect to forfeit their positions after the Effective Date but will be entitled to no further distribution(s) from the Liquidating Trust unless they elected on their ballot to assign any Personal Claims to the Estate, in which case they will be treated as a Class 3d Subordinated General Unsecured Creditor following such forfeiture and entitled to share in any Distributions made to holders of Allowed Class 3d Claims after the date of forfeiture

(c)    Class 3a is impaired and entitled to vote to accept or reject the Plan.

**6.    General Unsecured Claims (Class 3b)**

(a)    Class 3b consists of the Allowed Unsecured Claim of the Cooper Parties, which is Allowed in the amount of $10 million.  On the Effective Date, the Cooper Parties shall receive a pro rata share of the beneficial interest in the Liquidating Trust in full satisfaction, settlement, discharge, and release of, and in exchange for its Allowed Class 3b Unsecured Claim, which shall entitle the Cooper Parties to their Pro Rata Distribution of the Available Trust Proceeds after senior Classes are Paid in Full, subject to any applicable cap under and otherwise in accordance with the Cooper Stipulation, with all Pro Rata Distributions on the Allowed Class 3b Unsecured Claim to be made on a Pro Rata basis with the Allowed General Unsecured Claims in Class 3c.

(b)    Class 3b is impaired and is entitled to vote to accept or reject the Plan.

**7.    General Unsecured Claims Unrelated to Active Positions or to Forfeited Positions (Class 3c)**

(a)    Class 3c consists of all General Unsecured Claims unrelated to either Active Positions in the Original Trust or the New Trust or to forfeited positions in the Original Trust or the New Trust and who, if they are an Investor, elect on their ballot to assign their Personal Claims to the Liquidating Trust.  Class 3c includes any Claims by Investors based on allegations that the Debtor or its agents engaged in fraud, as long as the Investor elects on their ballot to assign their Personal Claims to the Liquidating Trust.

(b)    On the Effective Date, each Holder of an Allowed Class 3c General Unsecured Claim shall receive a pro rata share of the beneficial interest in the Liquidating Trust in full satisfaction,

9

settlement, discharge, and release of, and in exchange for its Allowed Unsecured Claim, which shall entitle such Holder to their Pro Rata Distribution of the Available Trust Proceeds after all senior Classes are Paid in Full.

(c)    Class 3c is impaired and is entitled to vote to accept or reject the Plan.

**8.    Subordinated General Unsecured Claims (Class 3d)**

(a)    Class 3d consists of all Subordinated General Unsecured Claims for Investors who have either forfeited their interests in a sub-trust or who would otherwise hold a Class 3c General Unsecured Claim but who did not elect on their ballot to assign their Personal Claims to the Liquidating Trust. For the avoidance of doubt, and notwithstanding anything to the contrary in the Plan, any Claim (or portion thereof) that is a Subordinated Claim shall receive treatment solely under Class 3d and not under any other Class. For clarity, the Debtor notes that it is possible for a claimant to hold a Class 3a General Unsecured Claim for their Active Position and a Class 3d Subordinated General Unsecured Claim to the extent that they are a Forfeited Investor.

(b)    On the Effective Date, each Holder of an Allowed Class 3d Subordinated General Unsecured Claim shall receive a pro rata share of the beneficial interest in the Liquidating Trust in full satisfaction, settlement, discharge, and release of, and in exchange for its Allowed Subordinated Unsecured Claim, which shall entitle such Holder to their Pro Rata Distribution of the Available Trust Proceeds after all senior Classes, including the Holders of Allowed Class 3C General Unsecured Claims, are Paid in Full.  Thus, there is a very high likelihood that such creditors will not receive a distribution under the Plan.

(b)    Class 3d is impaired and is entitled to vote to accept or reject the Plan.

**9.    Equity Interests (Class 4)**

(a)    Class 4 consists of all Equity Interests.

(b)    On the Effective Date, all Equity Interests shall be canceled and extinguished with no Distributions thereon.

(c)    Class 4 is impaired and is conclusively deemed to have rejected the Plan. Accordingly, Holders of Claims in Class 4 are not entitled to vote such Claims to accept or reject the Plan.

SECOND AMENDED PLAN

**E.     Means for Implementation of the Plan**

On the Effective Date, all Assets of the Debtor will vest in the Liquidating Trust.  The Liquidating Trustee will fund Distributions to creditors with Allowed Claims, prosecute the Estate Claims, and otherwise implement the Plan by the means described below.  In addition, on the Effective Date, all of the Life Settlement Policies held by the Original Trust or the New Trust will be deemed pooled into the New Trust and all sub-trusts will be deemed dissolved.  Last, the entry of the Confirmation Order will be deemed a ratification of all actions taken by the Receiver and the Debtor to initiate this Bankruptcy Case.

**1.     The Liquidating Trust**

**a.     Establishment of the Liquidating Trust**

On the Effective Date, a Liquidating Trust Agreement in a form approved by the Bankruptcy Court shall be executed, and all other necessary steps shall be taken to establish the Liquidating Trust and the Trust Beneficial Interests therein, which shall be for the benefit of the Holders of Allowed Claims in Classes 1b, 3b, 3c, and 3d.

**b.     Purpose of the Liquidating Trust**

The Liquidating Trust shall be established and maintained for the purpose set forth in the Liquidating Trust Agreement, including for the purpose of collecting, distributing, and liquidating Plan Assets and pursuing Estate Claims for the benefit of creditors entitled to receive distributions under the Plan from the Liquidating Trust in accordance with the terms of the Liquidating Trust Agreement and the Plan.  The Liquidating Trust shall have no objective or authority to continue or to engage in the conduct of any trade or business other than to authorize the sale of any Residual Interests that are held by the Liquidating Trust.

**c.     Transfer of Property to the Liquidating Trust**

On the Effective Date, all Plan Assets shall vest in the Liquidating Trust free and clear of all Claims, Liens or interests other than the Liens held by holders of Allowed Secured Claims.  On the Effective Date, the Liquidating Trustee shall make all Distributions required under the Plan on the Effective Date on Administrative Claims, Priority Tax Claims, and Other Secured Claims that are Allowed on or prior to the Effective Date.  All Distributions to be made pursuant to the Plan shall

11

be funded from the Plan Assets.  For the avoidance of doubt and without limiting the foregoing, all Residual Interests shall vest in the Liquidating Trust and be exercisable by the Liquidating Trustee in accordance with the provisions of the Plan, from and after the Effective Date and without the necessity of any action being taken by Odyssey Trust.

<strong>d.    Substitution in Litigation and Authority to Resolve Actions</strong>

On or after the Effective Date, the Liquidating Trustee, in the capacity as the representative of the Liquidating Trust, shall continue as a plaintiff in all Litigation and Estate Claims in which the Debtor or the Committee as the assignee of the Debtor were plaintiff prior to the Effective Date.  On the Effective Date, all Estate Claims including those on the list of Potential Litigation Targets that is attached to the Disclosure Statement as Exhibit "2" that belong to the Debtor and/or the Estate shall be deemed assigned, set over, transferred, and conveyed to the Liquidating Trust.  On and after the Effective Date, the Liquidating Trustee shall be duly authorized to pursue, or to continue to pursue Estate Claims.  The Liquidating Trustee shall have full power and authority to settle, adjust, retain, enforce, or abandon the Estate Claims, regardless of when the pursuit of such claims was commenced.  For settlements or other dispositions of $50,000 or less, the Liquidating Trustee shall not be required to obtain Court approval, although the Liquidating Trustee may seek such Court approval if desired.  For settlements of $50,001 or greater, the Liquidating Trustee shall first obtain Court approval, with notice of the motion to approve the settlement to be served on the Cooper Parties, the twenty (20) largest unsecured creditors and parties requesting special notice.

<strong>e.    Securities Exempt</strong>

Under § 1145 of the Bankruptcy Code and to the extent that the beneficial interests in the Liquidating Trust are considered securities, the issuance of beneficial interests in the Liquidating Trust to creditors shall be exempt from registration under the Securities Act, as amended, and all applicable state and local laws requiring registration of securities.

<strong>f.    Governance of the Liquidating Trust</strong>

The Liquidating Trust shall be governed by the Liquidating Trustee in accordance with the Liquidating Trust Agreement and consistent with the Plan.  Nicholas D. Rubin, or any successor

12

appointed pursuant to the terms of the Liquidating Trust Agreement, shall serve as the Liquidating Trustee, subject to the provisions of the terms of the Liquidating Trust Agreement.   The Liquidating Trustee shall retain and have all of the rights, powers, and duties necessary to carry out their responsibilities under the Plan and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order.  The duties, obligations, and responsibilities of the Liquidating Trustee shall be as set forth in the Liquidating Trust Agreement.  The Liquidating Trustee's responsibilities, duties, and obligations are solely to the Trust Beneficiaries.  The Liquidating Trustee shall have an independent right and standing to request relief from the Bankruptcy Court that the Liquidating Trustee believes to be in accordance with the best interest of the Trust Beneficiaries.  The Liquidating Trustee shall be deemed to be a "party in interest" within the meaning of § 1109(b) of the Bankruptcy Code and a representative of the Estate under Bankruptcy Code §§ 1123(b)(3) and 1129(a)(5).  The Liquidating Trustee shall be compensated in accordance with the Liquidating Trust Agreement.

g.        **Rights, Powers, and Privileges of the Liquidating Trustee**

The Liquidating Trustee shall have all of the rights, powers, and privileges of a chapter 11 trustee and as expressly provided in the Plan and the Liquidating Trust Agreement.  The Liquidating Trustee shall have the power to take the actions granted in the Liquidating Trust Agreement and any powers reasonably incidental thereto that the Liquidating Trustee, in his reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Liquidating Trust, unless otherwise specifically limited or restricted by the Plan or the Liquidating Trust Agreement.  In addition, on and after the Effective Date, the Liquidating Trustee shall serve as the grantor under the New Trust without the necessity of an amendment to the New Trust Agreement and be vested with all power and authority of the grantor under the New Trust Agreement.  If the Plan Assets are insufficient to pay Allowed Administrative Claims or the ongoing administrative expenses of the Liquidating Trust in full, then the Liquidating Trustee may exercise the grantor interest in the New Trust to cause its corpus to be used to pay these administrative expenses prior to their distribution to the beneficiaries of the New Trust.

13

#### h.  Agents and Professionals

Subject to the provisions of the Liquidating Trust Agreement, the Liquidating Trustee shall consult with and retain attorneys, accountants, or other parties deemed by the Liquidating Trustee to have qualifications necessary to assist in the proper administration of the Liquidating Trust. The Liquidating Trustee may pay the reasonable salaries, fees, and expenses of such persons, including contingency fees, out of the Plan Assets in the ordinary course to the extent permitted by the Liquidating Trust Agreement and may create reserves for these salaries, fees, and expenses from the Plan Assets.

#### i.  Investment and Safekeeping of Plan Assets

All Cash and Plan Assets received by the Liquidating Trustee shall, until distributed or paid as provided in the Liquidating Trust Agreement or the Plan be held in the Liquidating Trust for the benefit of the Trust Beneficiaries, but need not be segregated from other Plan Assets unless and to the extent required by law or the Plan.  The Liquidating Trustee shall be under no liability for interest or producing income on any moneys received by the Liquidating Trustee and held for distribution or payment to the Trust Beneficiaries, except as such interest shall actually be received by the Liquidating Trustee.

#### j.  Limitations on the Liquidating Trustee

Except as otherwise provided in the Plan, the Liquidating Trustee shall not at any time, on behalf of the Liquidating Trust, (i) enter into or engage in any trade or business, and no part of the Plan Assets or the proceeds, revenue, or income derived therefrom shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business, or (ii) except as provided in the Liquidating Trust Agreement, reinvest any Plan Assets.  The Liquidating Trustee may invest funds held in the Liquidating Trust consistent with the requirements of the Liquidating Trust Agreement and the prudent person standard of care, provided that the Liquidating Trustee shall have no liability in the event of insolvency of any financial institution in which they have invested any funds of the Liquidating Trust provided that the institution is on the list of the approved depositories by the United States Trustee.  The Liquidating Trustee shall hold, collect, conserve, protect, and administer the Liquidating Trust in accordance with the provisions of the Liquidating

14

Trust Agreement and the Plan, and pay and distribute amounts as set forth herein for the purposes set forth in the Liquidating Trust Agreement.

### k.        Bankruptcy Court Approval of Liquidating Trustee Actions

Except as provided in the Plan or otherwise specified in the Liquidating Trust Agreement, the Liquidating Trustee need not obtain the approval of the Bankruptcy Court in the exercise of any power, rights, or discretion conferred hereunder or account to the Bankruptcy Court. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall have the right to submit to the Bankruptcy Court any question regarding which the Liquidating Trustee may desire to have explicit direction and/or approval of the Bankruptcy Court with respect to the Plan Assets, the Liquidating Trust, the Liquidating Trust Agreement, the Plan, or the Debtor. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee shall also have the authority, but not the obligation, to seek Bankruptcy Court approval to sell any Plan Assets free and clear of any and all liens, claims, and encumbrances under 11 U.S.C. § 363, or otherwise.

### l.        Preservation of Privilege

In connection with the rights, claims, and Estate Claims, any attorney-client privilege, work-product privilege, common interest or other privilege or immunity attaching to any documents or communications (whether written or oral) of the Debtor or the Committee shall be transferred to the Liquidating Trust and shall be subject to the control of the Liquidating Trustee. The transfer to or vesting in the Liquidating Trust of the books and records of the Debtor, or any other Plan Assets, on the Effective Date shall not effect a waiver of any defense, privilege, or protection of the Debtor, and upon such transfer, the Liquidating Trust, acting by and through the Liquidating Trustee, shall hold all rights with respect to any such privileges and defenses on behalf or in lieu of the Debtor, including the right to waive privileges in its sole and absolute discretion.

### m.        No Bond

Notwithstanding any state law to the contrary, the Liquidating Trustee shall be exempt from giving any bond or other security in any jurisdiction.

### n.        Grantor Trust

The Liquidating Trust Agreement is intended to create a liquidating trust pursuant to

United States Treasury Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 684, and as a grantor trust subject to the provisions of Subtitle A, Chapter 1, Subchapter J, Part 1, Subpart E of the Tax Code (hereinafter defined) owned by the Beneficiaries as grantors.

### o.    Amendment of the Liquidating Trust Agreement

The Liquidating Trust Agreement may be amended at any time, pursuant to the terms of the Liquidating Trust Agreement.

### p.    Removal or Resignation of the Liquidating Trustee

The Liquidating Trustee may be removed for "cause" as determined on Motion to the Bankruptcy Court filed on not less than sixty (60) days' notice and served on the Liquidating Trustee, counsel for the Liquidating Trustee, and the OUST.  For any such Motion, "cause" will include (a) the Liquidating Trustee's willful failure to perform his, her or its material duties hereunder which is not remedied within 30 days of written notice and service thereof on the Liquidating Trustee; (b) the Liquidating Trustee's death; (c) the Liquidating Trustee's mental or physical incapacity that materially and adversely affects the Liquidating Trustee's ability to perform his, her or its duties under the Plan; (d) the Liquidating Trustee's commission of an act of fraud, theft or embezzlement in connection with the Liquidating Trustee's duties under the Plan; or (e) the Liquidating Trustee's conviction for the commission of a felony with all appeals having been exhausted or appeal periods lapsed. For purposes of the foregoing, no act or failure to act on the part of the Liquidating Trustee shall be considered "willful" unless it is done, or permitted to be done, by the Liquidating Trustee without reasonable belief that the Liquidating Trustee's action or omission was in the interests of the Holders of Allowed Claims in the context of the Plan.

In the event that the Liquidating Trustee seeks to resign as Liquidating Trustee, he shall first appoint a qualified successor Liquidating Trustee who must agree in writing to be bound by the provisions of the Plan and the Liquidating Trust Agreement.  Notice of the resignation and appointment of a successor Liquidating Trustee shall be given to the OUST, to any remaining holders of Allowed Secured Claims, and to the holders of the twenty largest Allowed General Unsecured Claims. Upon appointment consistent with this provision, any successor Liquidating

16

Trustee, without any further act, shall become fully vested with all the rights, powers, duties, and obligations of such successor Liquidating Trustee's predecessor.

### 2.      Pooling of the Life Settlement Policies in the New Trust

On the Effective Date, the Life Settlement Policies held by the New Trust will be deemed pooled and the sub-trust structure eliminated so that the New Trust is the owner of all of the Life Settlement Policies.  On the Effective Date, the Liquidating Trustee will identify all Active Investors, including those who are Holders of Allowed Class 3a General Unsecured Claims, and those Investors will receive the same amount of death benefit that they held when they held a beneficial interest in a sub-trust, but it will be across a pooled portfolio of Life Settlement Policies that have a cumulative death benefit equal to or greater than the amount of death benefits held by each Active Investor (the "Pooled Life Settlement Portfolio").  Beneficiaries of the New Trust will need to continue to pay their pro rata share of the premiums due on the Pooled Life Settlement Portfolio in order to maintain their status as an Active Investor.  For purposes of clarification and administrative consistency, all premium invoices issued by the Liquidating Trustee to Trust Beneficiaries will be calculated and rounded to the nearest two decimal places.  The Liquidating Trustee will have the authority to cause the sale of any Life Settlement Policies that are not needed to make the Active Investors whole or, if a sale is not feasible, to permit any unneeded Life Settlement Policy to lapse.  If Active Investors later forfeit their positions in the Pooled Life Settlement Portfolio, the Liquidating Trustee will have the authority to offer any forfeited positions for sale.

### 3.      Dissolution of the Committee

On the Effective Date, the Committee will be deemed dissolved and the members of the Committee discharged from their duties as members of the Committee.

### 4.      Release of Liens

Except as otherwise expressly provided in the Plan or the Confirmation Order, on the Effective Date, all Liens or other security interests in or against any property of the Estate shall be released, canceled, extinguished, and terminated, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote,

17

consent authorization, or approval of any Person. The Liquidating Trustee is empowered, in its sole discretion, but is not required, to file such releases or pleadings and/or record such documents or instruments as necessary to eliminate, expunge or release such liens from their respective assets. The filing of the Confirmation Order with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, Claims, and other interests to the extent provided in the immediately preceding sentence.

### 5. Cancellation of Claims, Interests and Obligations

On the Effective Date, notwithstanding anything to the contrary in the Plan, all Equity Interests in the Debtor, and every document, agreement, or instrument evidencing any interest in or Claim in the Debtor shall be deemed cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtor under any such document, agreement or instrument evidencing any such interest or Claim, including without limitation any obligation to indemnify any non-Debtor Person, shall be deemed extinguished; *provided, however*, that the provisions of any such document, agreement or instrument shall continue in effect solely to the extent necessary to allow any Holder to receive Distributions or exercise rights under the Plan or to allow the Liquidating Trustee to prosecute any Estate Claims.

### 6. Liability of Grady and Michaels for Claims Not Paid in Full Under the Plan

Based on the Alter Ego Finding, Grady's estate shall remain liable for all Claims not paid in full under the Plan.  Michaels shall remain liable for any Claims not paid in full under the Plan to the extent that such Claims arose on or before February 25, 2018.

### 7. Exemptions for Certain Taxes

Pursuant to § 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any stamp tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such tax or governmental assessment.  Such exemption(s) specifically applies,

18

without limitation, to all documents necessary to evidence and implement the provisions of and the Distributions to be made under the Plan.

### 8.    Distribution Rights

Any interest of any Holders in the Liquidating Trust, and any right to receive a Distribution under the Plan, shall not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the Liquidating Trust. Further, any such interests, and any right to receive a Distribution, shall be nontransferable and nonassignable except by will, intestate, succession, or operation of law. Any such interests and rights shall not constitute "securities" and shall not be registered pursuant to the Securities Act or the Investment Company Act of 1940, as amended.

### 9.    Corporate Authority; Further Transactions

(a)    The entry of the Confirmation Order shall effect a ratification of the authority of the Receiver to retain Nathan Cook of Teneo as an independent manager and to restate the articles of organization to make the Debtor managed by a manager and not by a member.

(b)    The entry of the Confirmation Order shall constitute authorization for the Liquidating Trustee or the Debtor, as applicable, to take or cause to be taken all actions necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action.

(c)    The Debtor or the Liquidating Trustee, as applicable, are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the Plan and its terms.

(d)    On the Effective Date, the operating agreement of the Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan and section 1123(a)(6) of the Bankruptcy Code.

(e)    Effective as of the Effective Date, all directors, managers, members, and officers of the Debtor shall be deemed to have resigned, solely in their capacities as such, and all such

19

appointments rescinded for all purposes, without any necessity of taking any further action in connection therewith.  This includes Nathan Cook, who shall be deemed discharged from his duties as the sole manager of the Debtor and shall have no responsibility to dissolve the Debtor or take any other action to wind down its affairs.

(f)    The Liquidating Trustee shall have all rights and powers of a trustee under the Bankruptcy Code.

(g)    From and after the Effective Date, the Liquidating Trustee shall have the full and exclusive power and authority to manage the Liquidating Trust and take such actions as may be necessary or appropriate, in the Liquidating Trustee's discretion, to carry out and implement the terms of the Plan, without further approval of the Bankruptcy Court except as expressly set forth in the Plan or in the Confirmation Order, including without limitation: (i) administering the terms of the Plan, the Confirmation Order, or any order of the Court; (ii) administering the Assets, including the use of the Liquidating Trust's revenues and cash; (iii) opening or closing any accounts of the Debtor; (iv) making the Distributions provided for under the Plan; (v) filing motions or commencing proceedings to determine the allowability, classification, and priority of Claims and interests; (vi) filing, prosecuting, or compromising any Estate Claims; and (vii) filing motions or commencing proceedings to seek an injunction, judgment or order, or taking any other action as may be necessary or appropriate to enforce the terms of, or to restrain interference with, the Plan or the Confirmation Order.  Without limiting the foregoing, the Liquidating Trustee shall exercise all rights of the grantor under the Original Trust agreement and the New Trust Agreement and is authorized to enter into any amendment thereto; provided that no such amendment shall materially and adversely change the rights or obligations of any Investor disproportionately vis-à-vis other Investors, absent the consent of such affected Investor.  The Liquidating Trustee may either instruct Odyssey Trust to make distributions to the holders of Allowed Class 3c General Unsecured Claims as the policies mature, or may elect to have Odyssey Trust transfer the death benefits to the Liquidating Trust to use to make any payments required to be made under the Plan.

(h)    Notwithstanding anything to the contrary herein, solely for purposes of applications for allowance and payment of Professional Fee Claims incurred prior to the Effective Date, Nicholas

20

SECOND AMENDED PLAN

D. Rubin, the Chief Restructuring Officer of the Debtor, shall serve as the exclusive representative of the Debtor and the Estates.

### F.    Procedures For Resolving Disputed Claims

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE BY CLAIMANTS WHOSE CLAIMS WERE NOT SCHEDULED OR WERE SCHEDULED AS DISPUTED, CONTINGENT OR UNLIQUIDATED WAS FEBRUARY 14, 2025, FOR CREDITORS GENERALLY AND APRIL 7, 2025, FOR GOVERNMENTAL UNITS.

### 1.    General Provisions

(a)    Except to the extent that any Claim is Allowed under the Plan, Confirmation Order or any other Final Order of the Bankruptcy Court, the Liquidating Trustee will have the authority to do any of the following with respect to any Claims or Equity Interests on and after the Effective Date: (i) file, withdraw or litigate to judgment any objections to Claims; (ii) settle or compromise any Disputed Claim, or otherwise determine any Claim to be Allowed, without any further notice to or action, order or approval by the Bankruptcy Court; or (ii) administer and adjust the Claims register to reflect any such settlements or compromises without any further notice to or action, order or approval by the Bankruptcy Court. The Liquidating Trustee shall succeed to any pending objections to Claims or adversary proceedings filed by the Debtor or Committee prior to the Effective Date and shall have and retain any and all rights and defenses the Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.

(b)    Any Claim that was scheduled by the Debtor as being contingent, unliquidated or disputed, and for which a Proof of Claim has not been timely filed by the applicable deadline established by Final Order of the Bankruptcy Court (or for which a late filing has not been authorized by Final Order), shall be deemed Disallowed for all purposes under the Plan.  The Liquidating Trustee shall file and serve a notice identifying any such Claims on or before the expiration of the Claim Objection Deadline, as such deadline may be extended from time to time by the Bankruptcy Court on motion of the Liquidating Trustee.

(c)    All objections to Claims that are classified under the Plan must be Filed and served on or before the expiration of the Claims Objection Deadline, as such deadline may be extended

21

from time to time by the Bankruptcy Court on motion of the Liquidating Trustee. The Liquidating Trustee and any other party-in-interest shall have standing to file objections to Claims. Except to the extent that any Claim is Allowed under the Plan, Confirmation Order or any other Final Order of the Bankruptcy Court, nothing shall affect the rights or defenses of the Liquidating Trustee, whether legal or equitable, with respect to any Claim, including all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

(d) The Liquidating Trustee may request estimation or liquidation of any Disputed Claim, including during the litigation of any objection to such Claim or during the appeal relating to such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute a maximum limitation on such Claim for all purposes of the Plan (including for purposes of Distributions), and the Liquidating Trustee may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim.

(e) The Liquidating Trustee shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

(f) Notwithstanding anything to the contrary herein, in accordance with section 510 of the Bankruptcy Code, the Liquidating Trustee shall have the right to seek to subordinate and re-classify any Allowed Claim as a Subordinated Claim in accordance with any contractual, legal, or equitable subordination rights or defenses relating thereto.

## 2. No Distribution Pending Allowance

No Distribution shall be made on any Claim unless it has been Allowed. Notwithstanding any other provision of the Plan, no Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim. For the avoidance of doubt, unless a Claim has been Allowed by entry of an order of the Court or because the deadline to object to such Claim has passed, the Claim shall be deemed a Disputed Claim.

22

SECOND AMENDED PLAN

### 3.   Reserves for Disputed Claims

In the event that Disputed Claims are pending at the time of a Distribution under the Plan, the Liquidating Trustee shall establish and maintain a reserve for such Disputed Claims.  For purposes of establishing a reserve for all Disputed Claims as otherwise required herein, Cash will be set aside equal to the amount that would have been distributed to the Holders of the Disputed Claims had the Disputed Claims been Allowed on the date a Distribution is made to the Holders of Allowed Claims in the same Class or of the same priority as the Disputed Claims.  Unless otherwise provided in the treatment with respect to a particular Claim, if a Disputed Claim ultimately becomes an Allowed Claim, the amount of Cash reserved for that Disputed Claim shall be distributed on the earlier of: (a) the Distribution Date following the date when the Disputed Claim becomes an Allowed Claim, or (b) ninety (90) days after such Disputed Claim becomes an Allowed Claim.  Any reserved Cash not ultimately distributed to the Holder of a Disputed Claim because the Disputed Claim does not become an Allowed Claim shall be returned to the Liquidating Trust.

### 4.   Claims Paid by Third Parties

To the extent that any Holder of a Claim receives any recovery on account of such Claim, whether before or after the Effective Date, then (i) the Holder of such Claim shall be required to, within thirty (30) days of the receipt of such recovery, file an amended proof of Claim reflecting a reduction of such Claim in the amount of such other recovery, and (ii) whether or not such amended proof of Claim is filed, the Claim shall be deemed reduced in the amount of such other recovery without an objection having to be filed and without any further notice, action, order, or approval by the Bankruptcy Court, and any Distributions to which such Holder is otherwise entitled under the Plan shall be adjusted accordingly.

### G.   Distributions

#### 1.   Distributions for Claims Allowed as of the Effective Date

Except as otherwise provided in the Plan, a Final Order, or as agreed to by the relevant parties, the Liquidating Trustee shall make initial distributions under the Plan on account of Claims Allowed before the Effective Date as soon as practicable after the Effective Date.   For payments

23

SECOND AMENDED PLAN

due on the Effective Date, a payment shall be deemed to be made on the Effective Date if it is made within ten (10) business days of the Effective Date.

### 2. Distributions for Claims Allowed After the Effective Date

#### a. Payments and Distributions on Disputed Claims

Except as otherwise provided in the Plan, a Final Order or as agreed to by the relevant parties, distributions under the Plan on account of a Disputed Claim that becomes an Allowed Claim after the Effective Date shall be made as soon as practicable after the Disputed Claim becomes an Allowed Claim.

#### b. No Distributions to Holders of Disputed Claims

Notwithstanding any provision otherwise in the Plan, and except as otherwise agreed to by the relevant parties, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order.  In the event that there are Disputed Claims requiring adjudication and resolution, the Debtor or the Liquidating Trustee, as the case may be, shall establish appropriate reserves for potential payment of such Claims.

### 3. Delivery of Distributions; Undeliverable or Unclaimed Distributions

#### a. Delivery of Distributions in General

Except as otherwise provided herein, the Debtor and the Liquidating Trustee, as the case may be, shall make distributions to Holders of Allowed Claims at the address for each such Holder as indicated on the Debtor's records as of the date of any such distribution or any Proof of Claim filed by that Holder.

#### b. Undeliverable Distributions

Distributions to Holders of Allowed Claims will be made as set forth in subsection (a) above. Holders of Allowed Claims may change the address to which the distributions will be sent by filing a written change of address with the Bankruptcy Court and serving a copy of the change of address on the Liquidating Trustee.  If a distribution is returned as undeliverable, the Liquidating Trustee shall hold the distribution and shall not be required to take any further action with respect to the delivery of the distribution unless and until the Liquidating Trustee is notified in writing of the then-

current address of the person or entity entitled to receive the distribution. Unless and until the Liquidating Trustee is so notified, such distribution shall be deemed to be "Unclaimed Property" and shall be dealt with in accordance with the provision below for distribution of Unclaimed Property.

If a distribution made by check or draft is not presented for payment within six (6) months of the mailing to the last known address of such Person, the distribution shall be deemed nonnegotiable and treated as Unclaimed Property pursuant to the provision below.

**c.      Distributions of Unclaimed Property**

If any distributions are returned to Liquidating Trustee as undeliverable, then such distributions shall be deemed to be "Unclaimed Property."  Nothing contained in this Plan shall require the Liquidating Trustee, or anyone else, to attempt to locate such person or entity.  The Unclaimed Property shall be set aside and, in the case of cash, held in a segregated account to be maintained by the Liquidating Trustee.  If such person or entity presents itself within six (6) months of the date of the payment returned as undeliverable, then the Unclaimed Property shall be distributed to such person or entity.  If such person or entity does not present itself within six (6) months of the date of payment returned undeliverable, then any such Unclaimed Property shall be donated to the Credit Abuse Resistance Education program, which is a financial literacy outreach program for students and young adults.

**4.      Compliance with Tax Requirements/Allocations**

In connection with the Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant hereto shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Liquidating Trustee shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms it believes are reasonable and appropriate.

25

SECOND AMENDED PLAN

For tax purposes, distributions in full or partial satisfaction of Allowed Claims shall be allocated first to the principal amount of Allowed Claims, with any excess allocated to unpaid interest that accrued on such Claims.

### H.      Treatment of Executory Contracts and Unexpired Leases

#### 1.      Assumption of Executory Contracts and Unexpired Leases

The only executory contracts to which the Debtor is a party is the New Trust Agreement and, to the extent not terminated prior to the Effective Date, the Original Trust agreement. The New Trust Agreement will be assumed on the Effective Date and assigned to the Liquidating Trust, with the Liquidating Trustee granted the power and authority under the Plan to act as the grantor. If the Original Trust agreement has not yet been terminated, then that agreement will also be assumed with the Liquidating Trustee granted the power ant authority under the Plan to act as grantor. The Debtor does not believe that there are any defaults required to be cured as a condition to assumption. Any other executory contracts or unexpired leases will be rejected on the Effective Date.

If you are a party to either of these trust agreements and you object to the assumption of your contract and/or you dispute that no cure amount is owing, then you must file and serve upon the Debtor and its counsel a written objection within the deadline for objecting to the confirmation of the Plan. An objection to the cure amount must also set forth the amount you contend to be the correct cure amount and contain evidence to support such amount. Failure to timely file an objection as provided herein shall be deemed consent to the proposed assumption, assignment, and no cure amount, and a waiver of any and all rights to challenge such assumption, assignment and cure amount.

#### 2.      Rejection of Other Executory Contracts or Unexpired Leases

On the Effective Date, the Debtor will be deemed to have rejected all other executory contracts and unexpired leases not explicitly assumed and assigned under the Plan. The Confirmation Order will constitute a Court order approving the rejection, as of the Effective Date, of such executory contracts and unexpired leases. Any Claim for damages arising from the rejection under the Plan of any executory contract or unexpired lease must be filed with the Court and served upon the Liquidating Trustee and their counsel within thirty (30) days of the Confirmation Date.

26

SECOND AMENDED PLAN

Any such damage Claims that are not timely filed and served will be forever barred and will be unenforceable against the Debtor, the Liquidating Trust, the Estate and their respective property. Persons holding these Claims who fail to timely file Claims will be barred from receiving any Distributions under the Plan on account of their requested damage Claims.

IF YOU ARE A PARTY TO A LEASE OR CONTRACT TO BE REJECTED AND YOU OBJECT TO THE REJECTION OF YOUR LEASE OR CONTRACT, THEN YOU MUST FILE AND SERVE YOUR OBJECTION WITHIN THE DEADLINE FOR OBJECTING TO THE CONFIRMATION OF THE PLAN.

### I. Preservation of Causes of Action and Avoidance Actions

The Plan reserves for the Liquidating Trust all rights to commence and pursue, as appropriate, any and all Estate Claims, whether arising prior to or after the Petition Date, in any court or other tribunal.  On the Effective Date, the Liquidating Trustee is vested with authority to enforce, file, litigate, prosecute, settle and collect Estate Claims, including Avoidance Actions, although the Liquidating Trustee will not be required to do so unless it determines that doing so would be in the best interests of Holders of Allowed Claims.  Any recoveries on Estate Claims shall be paid to the Liquidating Trust and be used to pay operating expenses or make Distributions on account of Allowed Claims in accordance with the terms of the Plan.

While the Estate Claims have been defined and described herein, the failure to list any potential Estate Claim or defendant, generally or specifically, is not intended to limit the rights of the Liquidating Trustee to pursue any Estate Claim that is vested in such party in the Plan.  No Person may rely on the absence of a specific reference in the Plan to any claim or cause of action against such Person as any indication that such claim has been or will be released and will not be pursued by the Liquidating Trustee.  All Estate Claims are Plan Assets vesting in, and being retained by, the Liquidating Trust unless expressly released by the Confirmation Order or the Plan.  No preclusion doctrine, including, without limitation, the doctrine of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to any Estate Claim upon or after confirmation or consummation of the Plan.

SECOND AMENDED PLAN

## J.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain jurisdiction over all matters arising in, arising under, and related to the Case, the Debtor, the Liquidating Trust, and the Plan to the fullest extent permitted by law, including, without limitation, jurisdiction and authority to:

(a)    allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim, including, without limitation, the resolution of any and all objections to the allowance or priority of any Claim;

(b)    grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Confirmation Date;

(c)    resolve any matters related to the assumption, assignment or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party;

(d)    resolve any issues related to any matters adjudicated in the Case;

(e)    ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

(f)    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Estate Claims that are pending as of the Effective Date or that may be commenced in the future, provided that the Liquidating Trustee shall reserve the right to commence actions in all appropriate forums and jurisdictions;

(g)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan;

(h)    resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

28

(i) issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan, except as otherwise provided in the Plan;

(j) enforce the terms of the Plan;

(k) enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(l) resolve any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan; and

(m) enter an order concluding the Cases.

## III. EFFECT OF CONFIRMATION OF THE PLAN; OTHER PROVISIONS

### 1. Binding Nature of Plan

CONFIRMATION OF THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER (I) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN, (II) HAS FILED A PROOF OF CLAIM OR INTEREST IN THE BANKRUPTCY CASES OR (III) FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN OR VOTED TO REJECT THE PLAN.

### 2. Discharge

Because this is a liquidating Plan, the Debtor will not receive a discharge upon the entry of the Confirmation Order.

### 3. Injunction

All Persons or entities who have held, hold, or may hold Claims (other than Claims that are unimpaired under the Plan), and all other parties in interest in the Case, along with their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates, are permanently enjoined, from and after the Effective Date, from, in respect of any Claim or cause of action treated, discharged, released, or settled under the Plan, (i) commencing,

29

conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative, or other forum) on account of such Claim or cause of action or against the Liquidating Trust or the Plan Assets; (ii) enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means, whether directly or indirectly, of any judgment, award, decree, or order against the Liquidating Trust or the Plan Assets; (iii) creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Liquidating Trust or the Plan Assets; (iv) asserting any right of setoff, subrogation, or recoupment of any kind, against any obligation due from the Liquidating Trust or the Plan Assets on account of such Claims; (v) commencing or continuing in any manner any action or other proceeding of any kind on account of, in connection with, or with respect to any such Claims released or settled pursuant to the Plan; or (vi) taking any act to obtain possession or collect from Plan Assets; provided, however, that nothing contained herein shall preclude such entities from exercising their rights pursuant to and consistent with the terms of the Plan.

### 4. **Exculpation**

The Exculpated Parties will neither have nor incur any liability to any Entity for any act or omission occurring on or after the Petition Date and prior to or on the Effective Date in connection with, concerning or relating to the Case or the Plan, including any act or omission relating to (i) the negotiation or approval of any agreements or pleadings that were either filed with the Bankruptcy Court or otherwise relating to the Case or the Plan, (ii) the formulating, negotiating, preparing, disseminating, implementing, administering, or effecting of the Plan, or (iii) soliciting or seeking confirmation of the Plan; provided, however, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined by a Final Order of the Bankruptcy Court or other court of competent jurisdiction to constitute gross negligence, bad faith, willful misconduct, or professional negligence.

### 5. **Limitation of Liability**

To the greatest extent permitted by law, neither the Liquidating Trustee, the Debtor, the Estate, the Committee, nor any of their employees, officers, directors, shareholders, agents,

30

members, representatives, or the professionals employed or retained by any of them, whether or not by Court order, shall have or incur any liability to any person or entity for any act taken or omission made in good faith from the Petition Date and prior to or on the Effective Date in connection with or related to the formulation and implementation of the Plan, Disclosure Statement or a contract, instrument, release or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, tor the consummation and implementation of the Plan and the transactions contemplated therein; provided however that the foregoing exculpation shall not extend to any act or omission constituting fraud, willful misconduct, gross negligence, or professional negligence by the foregoing parties.  Each of the exculpated persons set forth in this Section shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.  Notwithstanding the foregoing, nothing contained in this Plan shall effectuate a exculpation, release, or injunction in favor of the Debtor's members, alter egos, or the professionals retained by them prepetition.

### 6.    Amendment or Modification of the Plan

The Debtor may amend or modify the Plan at any time prior to the entry of the Confirmation Order, or after entry of the Confirmation Order upon notice and a hearing, provided that the Plan, as amended or modified, satisfies all applicable Bankruptcy Code requirements for confirmation and for disclosure statement purposes and does not materially and adversely change the treatment of any Class. Any Holder of a Claim that has voted to accept the Plan shall be deemed to have accepted the Plan as amended or modified, if the proposed amendment or modification does not materially and adversely change the treatment of the Claim of such Holder, unless the Bankruptcy Court orders otherwise.

### 7.    Controlling Interpretation

The Plan shall control in the event of any inconsistency with the Disclosure Statement or any Exhibit, and the Confirmation Order shall control in the event of any inconsistency with the Plan, or any other agreement, exhibit or document.

31

SECOND AMENDED PLAN

**8.      Submission of Post-Confirmation Reports**

Within 120 days of the entry of the Confirmation Order, the Liquidating Trustee shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan.  The status report shall be served on each of the following or their counsel via notice of electronic filing: (a) the OUST; and (b) and such parties that receive notice of electronic filings in the Chapter 11 Cases.  Further status reports shall be filed every 120 days and served on the same entities.

**9.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) prior to confirmation shall be paid to the OUST on or before the Effective Date.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the OUST by the Liquidating Trustee until a final decree, or the entry of an order dismissing the Case or converting the Case to Chapter 7, at the rate in effect at the time such fees are due.

**10.      Post-Confirmation Conversion/Dismissal**

After the Plan is confirmed, a creditor or party in interest may bring a Motion, only after notice and a hearing, to convert or dismiss the Chapter 11 Case under Bankruptcy Code section 1112(b).  If the Bankruptcy Court orders the Chapter 11 Case converted to Chapter 7 after the Plan is confirmed, then all Plan Assets that have not been distributed under the Plan will revest in the Chapter 7 estate.  The automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously authorized by the Bankruptcy Court during the Chapter 11 Case.

The Confirmation Order may also be revoked under very limited circumstances.  The Bankruptcy Court may revoke the Confirmation Order if it was procured by fraud and if a party in interest brings an adversary proceeding to revoke the confirmation within 180 days after the entry of the Confirmation Order.

SECOND AMENDED PLAN

## IV.    **<u>CONCLUSION</u>**

The Debtor believes that the Plan is in the best interests of all stakeholders and urges all eligible Holders of Allowed Claims to vote in favor of the Plan.

DATED:  October 10, 2025                    RAINES FELDMAN LITTRELL LLP


By:      */s/ Kyra E. Andrassy*
HAMID R. RAFATJOO
KYRA E. ANDRASSY
Counsel for Reliant Life Shares, LLC, Debtor and
Debtor-In-Possession

33

SECOND AMENDED PLAN

# TABLE OF DEFINITIONS

## A.   Definitions

The following defined terms are used in the Disclosure Statement and in the Plan. Any capitalized term that is not defined herein, but that is defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meaning ascribed that term in the Bankruptcy Code or the Bankruptcy Rules.

"Accounts Receivable" means all rights of the Debtor or the Estate, including all rights as the grantor under the Original Trust agreement or the New Trust Agreement, on its own behalf or on behalf of the Original Trust trustee or the New Trustee, to demand or collect payment from Investors of premiums, expenses, or other obligations relating to the preservation or maintenance of the Life Settlement Policies, and any claim, remedy or other right relating to the foregoing, including but not limited to the right to compel payment or turnover of any such amounts collected or received by the Original Trust trustee to the New Trustee.

"Active Positions" means an interest in the Original Trust or the New Trust that is held by Investors who have paid and who continue to pay their pro rata share of premiums and their administrative expense fees on a timely basis.

"Administrative Claim" means any Claim for costs and expenses of administering the Case or preserving the Estate allowed and entitled to priority under section 503(b) or section 507(a)(2) of the Bankruptcy Code, including, without limitation, any Professional Fee Claim and any fees or charges asserted against the Estate under 28 U.S.C. § 1930.

"Allowed" means a Claim that is either (a) listed in the Schedules filed with the Bankruptcy Court by the Debtor and not listed as disputed, contingent, unliquidated or unknown as to amount and as to which no timely objection has been filed; or (b) with respect to which a proof of claim has been filed by the Claims Bar Date, and as to which wither (i) no objection or motion to estimate was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (ii) any such objection has been determined with the Claim being allowed by a Final Order. The amount of an Allowed Claim shall be as follows: (a) if the creditor did not file a proof of claim with the Bankruptcy Court on or before the Claims Bar Date, (1) the

SECOND AMENDED PLAN

amount of the creditor's Claim as listed in the operative Schedules as not disputed, contingent, unliquidated or unknown, or (2) the amount fixed by Final Order of the Bankruptcy Court in resolving any timely filed objection or other motion disputing the amount of such Claim; or (b) if the creditor filed a proof of claim with the Bankruptcy Court on or before the Claims Bar Date and the claim is not a Contingent Claim, (1) the amount stated in such proof of claim if no objection to such proof of claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court, or (2) the amount thereof as fixed by a Final Order of the Bankruptcy Court if an objection to such proof of claim was filed within the time period fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or order of the Bankruptcy Court.  Any Claim for which a proof of claim is not filed by the Claims Bar Date and that is not listed in the Schedules or is listed in the Schedules as disputed, unliquidated, contingent or unknown shall be zero, and no distribution shall be made on account of such Claim.  An Allowed Claim shall not include any unmatured or post-petition interest unless otherwise stated in the Plan.  Notwithstanding anything to the contrary in the Plan, a Disputed Claim shall not be deemed Allowed unless and until such objection has been resolved by agreement or by Final Order.  For the avoidance of doubt, Claims or Interests allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

"Allowed [Class Designation and/or Secured, Priority, or General Unsecured] Claim" means an Allowed Claim in the specified Class and/or of the specified type.

"Available Trust Proceeds" means the Cash available from the sale or other disposition of Plan Assets after the payment of the operating expenses of the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

"Avoidance Action" means causes of action arising under 11 U.S.C. §§ 510, 541, 542, 544, 545, 547, 548, 549, 550, 551 and/or 553, or under related state or federal statutes and common law, including, without limitation, fraudulent transfer laws, whether or not litigation is commenced to prosecute such causes of action.

35

"Bankruptcy Case" or "Case" means the bankruptcy case of the Debtor under the Bankruptcy Code that is pending before the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, Case No. 24-11695 (MB).

"Bankruptcy Code" or "Code" means Title 11 of the United States Code, as amended.

"Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division.

"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure, as amended, and the Local Bankruptcy Rules for use in the United States Bankruptcy Court for the Central District of California.

"Business Day" means any day, other than a Saturday, a Sunday or a "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a).

"Cash" means cash and cash equivalents including, but not limited to, checks or similar forms of payment or exchange.

"Claim" means (i) a right to payment from the Debtor, whether or not such right to payment is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and includes any claims based on, arising from, or connected with any work performed by the Debtor prior to the Petition Date, or (ii) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment from the Debtor whether or not such right to an equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

"Claims Bar Date" means February 14, 2025, the date established by the Bankruptcy Court as the deadline for the filing of a proof of Claim against the Debtor or the Estate.

"Claim Objection Deadline" means the first Business Day that is one (1) year after the Effective Date.

"Class" means any group of Claims or Interests classified in the Plan pursuant to sections 1122 and 1123 of the Bankruptcy Code.

"Confirmation Date" means the date on which the Bankruptcy Court enters the Confirmation Order.

36

SECOND AMENDED PLAN

"Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Debtor" means Reliant Life Shares, LLC.

"Disclosure Statement" means the *Second Amended Disclosure Statement Describing Second Amended Chapter 11 Plan of Liquidation*, including as may be further amended or modified.

"Disputed Claim" means all or any part of a Claim that is the subject of a timely objection or request for estimation filed on or before the Claims Objection Deadline (as such deadline may be extended), which objection or request for estimation has not been withdrawn or determined by a Final Order of the Bankruptcy Court.  In addition, prior to the later of (a) the Claims Objection Deadline, (b) if prior to the Claim Objection Deadline, a motion to disallow or estimate the Claim is filed, then the date upon which such motion is determined by Final Order, or (c) if a proceeding is pending to determine the validity, amount, or characterization of the Claim before a court of competent jurisdiction (and if and to the extent that, prior to the Effective Date, the Bankruptcy Court entered an order lifting the automatic stay to allow the proceeding to proceed to final judgment), then the date upon which such proceeding, including, without limitation, any appeal or remanded or further proceedings in or related to such proceeding, is resolved by a Final Order, any Claim that is evidenced by a Proof of Claim shall be deemed a Disputed Claim for purposes of calculating and making any Distributions under this Plan if: (1) no Claim corresponding to the proof of claim is listed in the Schedules, (2) the Claim corresponding to the proof of claim is listed in the Schedules as disputed, contingent, unliquidated, or unknown, (3) the amount of the Claim as specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules as not disputed, not contingent, and liquidated, but only to such extent, or (4) the priority or classification of the Claim as specified in the Proof of Claim differs from the priority of any corresponding Claim listed in the Schedules.

"Distribution" means any distribution of Cash or other property by the Liquidating Trustee to a Creditor on account of an Allowed Claim pursuant to the Plan.

"Effective Date" means the first business day after the Confirmation Order becomes a Final Order.

SECOND AMENDED PLAN

"Equity Interest" means any "equity security" as provided by section 101(16) of the Bankruptcy Code.

"Estate" means the bankruptcy estate of the Debtor created under section 541 of the Bankruptcy Code in the Case.

"Estate Claims" means any and all claims and causes of action that constitute property of the Estate including, but not limited to, any Avoidance Actions, equitable subordination or debt recharacterization actions, any causes of action or claims for recovery of any amounts owing to the Debtor or the Estate, and any claims or causes of action against trustees of the statutory trusts where the Debtor was the grantor. Without limiting the foregoing, the Estate Claims include but are not limited to all Avoidance Actions and all claims and potential claims against the Potential Litigation Targets identified on Exhibit "2," including Scott Grady and other former directors, officers, shareholders or other Insiders of the Debtor, and their affiliates, for breaches of fiduciary duty, negligence, conversion, self-dealing and related claims including contribution claims resulting from the Cooper Judgment. It also includes Avoidance Actions and all claims and potential claims against sales agents, brokers, financial institutions, and parties who received transfers from the Debtor or its assets without providing reasonably equivalent value or who received actual fraudulent transfers from the Debtor. Estate Claims includes Personal Claims assigned to the Liquidating Trust by Creditors who elect to do so on their ballots.

"Excess Cash" means the past-due premiums as of the Petition Date, recoveries from claims and causes of action brought or settled by the Debtor, the Committee, or the Liquidating Trustee, and proceeds from the maturity or sale of the unallocated, forfeited, or retained shares of the life insurance policies held by either the Original Trust or the New Trust or any successor trust that the Debtor or Liquidating Trustee causes to be established with the approval of the Court. For purposes of this definition, forfeited shares are those in which fractional interest holders have not timely paid their portions of past-due premiums and/or are not current on their premium payments, regardless of whether those interests have been formally transferred to the Debtor.

"Exculpated Parties" means, collectively, and in each case in its capacity as such, (a) the Debtor; (b) the Committee and the Committee members; (c) the directors or managers of the Debtor

38

as of the date of the Confirmation Hearing; and (d) any Professional of the Debtor or the Committee.

"File," "Filed," or "Filing" means duly and properly filed with the Court and reflected on the Court's official docket.

"Final Order" means an order or judgment entered by the applicable court on its docket.

a.    That has not been reversed, rescinded, stayed, modified, or amended;

b.    That is in full force and effect;

c.    With respect to which the time to appeal or to seek review, remand, rehearing, or a writ of certiorari has expired and as to which no timely Filed appeal or petition for review, rehearing, remand, or writ of certiorari is pending; and

d.    With respect to which any appeal, motion or petition for review, remand, rehearing, or reconsideration, or writ of certiorari that is Filed has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, reconsideration, or a writ of certiorari was sought, and any remanded or further proceedings following such appeal, petition, or writ have been resolved by Final Order.

"Forfeited Investor" is a client of the Debtor who failed to timely pay their share of premiums at some point prior to the Effective Date and therefore elected to cease being an Investor prior to the Effective Date.

"General Unsecured Claim" means any Claim that is not a Secured Claim, an Administrative Claim, or a Priority Claim.

"Holder" means the beneficial holder of any Claim or Interest.

"Initial Estate Recovery" is defined as the first $1.5 million of Excess Cash.

"Insider" shall have the meaning in 11 U.S.C. § 101(31).

"Insurance Policies" means any and all insurance policies, insurance settlement agreements, coverage-in-place agreements, and other agreements, documents, or instruments providing or relating to coverage for liability, entered into by or issued to or for the benefit of, at any time, the Debtor, including without limitation any policies providing tail or runoff coverage and any policies providing coverage for liabilities relating to acts or omissions by any current or former directors or

39

officers of the Debtor. For the avoidance of doubt, Life Settlement Policies are not Insurance Policies.

"Investor(s)" means those individuals or entities who previously purchased a fractional interest in the net death benefit of any Life Settlement Policy and have not forfeited such interest as of the Effective Date.

"Investor Interest" means any contractual or equitable interest or other right held by an Investor in any Life Settlement Policy as of the Effective Date.

"Lien" has the meaning set forth in section 101(37) of the Bankruptcy Code and, with respect to any property or asset, includes any mortgage, lien, pledge, charge, security interest, or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

"Life Settlement Policies" means the life insurance policies or life settlement contracts held by the New Trust. The Life Settlement Policies are specifically identified on Exhibit "4" but excludes any of the Life Settlement Policies that are sold or permitted to lapse prior to the Effective Date.

"Liquidating Trust" means the Reliant Life Shares, LLC Liquidating Trust that will be formed on the Effective Date pursuant to the terms of the Plan and the Liquidating Trust Agreement.

"Liquidating Trustee" means a Person selected by the Debtor to serve as the trustee of the Liquidating Trust as of the Effective Date, to effectuate the provisions of the Plan after the Effective Date. The Liquidating Trustee is presently expected to be Nicholas D. Rubin, the current chief restructuring officer of the Debtor.

"Liquidating Trust Agreement" means the agreement between the Debtor and the Liquidating Trustee, as the same may be amended from time to time in accordance with its terms, a copy of which is attached to the Disclosure Statement as Exhibit "1."

"Liquidating Trust Beneficiaries" are the Holders of Allowed Claims who are given beneficial interests in the Liquidating Trust under the Plan.

40

"Liquidation Analysis" means the hypothetical analysis of what Holders of Allowed Claims would receive in a chapter 7 liquidation, which is attached to the Disclosure Statement as Exhibit "3."

"Motion" means a request asking a judge to issue a ruling or order on a legal and/or equitable issue.

"New Trust" means the Reliant Life Shares Receivership Statutory Trust dated June 27, 2024, under which Odyssey Transfer and Trust Company serves as trustee.

"Original Trust" means the Reliant Life Shares Series Statutory Trust as set forth in the Second Amended and Restated Agreement and Declaration of Trust Dated as of March 16, 2023.

"OUST" means the Office of the United States Trustee, Region 16.

"Person" means any individual, corporation, general partnership, limited partnership, limited liability company, association, joint-stock company, joint venture, estate, trust, government, political subdivision, governmental unit (as defined in the Bankruptcy Code), official committee appointed by the OUST, unofficial committee of creditors or equity holders, or entity.

"Personal Claims" means any claims or causes of action that an Investor or Creditor has or may have against the Estate, its insiders, and any agents (and their employers), financial institutions, trusts, sub-trusts, Series Trusts, or trustees thereof relating in any way to the Life Settlement Policies or the conduct of the Debtor's business.

"Petition Date" means October 7, 2024, the day that the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

"Plan" means the *Second Amended Chapter 11 Plan of Liquidation,* including as may be further amended or modified.

"Plan Assets" means all property, rights or other assets of the Debtor, the Estate, or the Liquidating Trust of any kind or nature, whether existing as of the Effective Date or arising thereafter, wherever located and whether tangible or intangible, and any proceeds thereof, including without limitation (a) all Cash of the Debtor and all of the Debtor' bank accounts; (b) all Accounts Receivable; (c) all Estate Claims; (d) all of the Debtor's rights or interests, including without limitation all Residual Interests, in or under the Original Trust agreement or New Trust Agreement

SECOND AMENDED PLAN

and any other documents related to the Original Trust or New Trust, as may be amended from time to time; (e) all rights of setoff, recoupment, and other defenses against Claims; and (f) all documents, communications and information of the Debtor.  For avoidance of doubt, Plan Assets include Excess Cash.  Plan Assets shall be deemed "property of the estate" within the meaning of 11 U.S.C. § 363.

"Potential Litigation Targets" include the parties specifically identified on Exhibit "2" and (1) any other party who received a transfer of money or property from the Debtor or with whom the Debtor incurred debt without the Debtor receiving reasonably equivalent value in exchange for the transfer or incurrence of debt, (2) any third party who received a transfer of money or property from the Debtor as part of the Debtor's intent to hinder, delay, or defraud any creditor and who did not receive such transfer in good faith and without knowledge of the voidability of the transfer, and (3) any malpractice actions against the Debtor's former attorneys or accountants.

"Projections" means the projections of the Liquidating Trustee's post-confirmation payments under the Plan, to be provided prior the hearing to confirm the Plan.

"Priority Tax Claim" means a Claim that is entitled to priority against the Estate under section 507(a)(8) of the Bankruptcy Code.  For the avoidance of doubt, tax claims arising or incurred during the pendency of the Case are classified and treated as Administrative Claims.

"Other Priority Claim" means a Claim that is entitled to priority against the Estate under section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) and 507(a)(7) of the Bankruptcy Code other than an Administrative Claim, Secured Claim or Priority Tax Claim.

"Pro Rata" means, with respect to any Allowed Claim in any particular Class or other group of Claims, the ratio of the amount of such Allowed Claim to the aggregate amount of all Allowed Claims and all Disputed Claims in such Class or other group of Claims.

"Professional" means "means any professional person employed in the Bankruptcy Case under an express order of the Bankruptcy Court pursuant to sections 327, 328 or 1103 of the Bankruptcy Code and to be compensated for services rendered pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code and includes Force Ten Partners, LLC. The term "Professional" does not include any professionals employed by or on behalf of the Debtor or the Estate in the ordinary course and without an express order of the Bankruptcy Court.

42

SECOND AMENDED PLAN

"Professional Fee Claim" means:

a.      A Claim under Bankruptcy Code §§ 327, 328, 330, 331, 503, or 1103 for compensation for professional services rendered or expenses incurred on the Estate's behalf, or

b.      A Claim either under Bankruptcy Code § 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code § 503(b)(3)(D) or (E) for expenses incurred in making a substantial contribution to the Estate.

"Request for Payment" means a request for the allowance and payment of a Non-Ordinary Course Administrative Claim pursuant to 11 U.S.C. § 503(a) or 11 U.S.C. § 507(a)(2) that is Filed with the Bankruptcy Court.  For the avoidance of doubt, the deadline for the Debtor to object or otherwise respond to any Request for Payment filed after the Effective Date, whether styled as a Motion or otherwise, shall be the Claim Objection Deadline.

"Residual Interest" means all rights or interests of the Debtor, the Estate, or the Liquidating Trust in or relating to any Life Settlement Policy, including but not limited to any such interests that were never sold and any Investor Interests that have been forfeited to the Debtor or that will be forfeited to the Liquidating Trust, and any rights as the grantor under the Original Trust agreement or the New Trust Agreement.  It does not include any beneficial interest held by an Investor who has continued to pay and who will continue to pay their pro rata share of premiums.

"Schedules" means the Schedules of Assets and Liabilities filed by the Debtor in the Case [Docket No. 116], as have been or may be amended from time to time.

"Secured Claim" means a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by Final Order of the Bankruptcy Court, or that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the Holder of such Claim's interest in the Estate's interest in such property or the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or as Allowed in accordance with the Plan.

"SOFA" means the Statement of Financial Affairs filed by the Debtor in the Case [Docket No. 116], as have been or may be amended from time to time.

"Subordinated Claim" means and refers to (a) any Claim filed by a Forfeited Investor, (b) any Claim or portion thereof based on penalties, punitive or exemplary damages, or otherwise not for compensatory damages, except to the extent allowable under section 507(a)(8) of the Bankruptcy Code, and (c) a Claim that is subordinated in a Final Order pursuant to section 510 or any other provision of the Bankruptcy Code or applicable law.

**B.        Rules of Construction**

For the purpose of this Disclosure Statement and the Plan, unless otherwise provided in this Disclosure Statement or the Plan, (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (ii) each pronoun stated in the masculine, feminine or neuter shall include the masculine, feminine and neuter; (iii) any reference in this Disclosure Statement or the Plan to an existing document, Exhibit or schedule filed or to be filed means such document or schedule as it may have been or may be amended, modified or supplemented pursuant to this Disclosure Statement and the Plan; (iv) any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns; (v) except as otherwise stated herein, all references in this Disclosure Statement and the Plan to sections, Articles and Exhibits are references to sections, Articles and Exhibits of or to this Disclosure Statement or the Plan, as the case may be; (vi) the words "herein," "hereunder" and "hereto" refer to this Disclosure Statement or the Plan in its entirety rather than to a particular portion of this Disclosure Statement or the Plan, as the case may be; (vii) unless otherwise provided in this Disclosure Statement or the Plan, any reference in this Disclosure Statement or the Plan to a contract, instrument, release, indenture, agreement, or other document being in a particular form or on particular terms and conditions means that such document shall be substantially and materially in such form or substantially and materially on such terms and conditions; and (viii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the extent such rules are not inconsistent with the express terms of this Disclosure Statement or the Plan.

**C.        Rules of Interpretation**

(a)        Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

SECOND AMENDED PLAN

(b)    Any term used in the Plan that is not a Defined Term, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to such term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.

(c)    The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Disclosure Statement.

(d)    Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

(e)    Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms or as amended by the terms thereof.

(f)    Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

(g)    Unless otherwise indicated, the phrase "under the Plan" and similar words or phrases refer to the Plan in its entirety rather than to only a portion of the Plan.

(h)    Unless otherwise specified, all references to sections or Exhibits in the Disclosure Statement are references to this Disclosure Statement's sections or Exhibits, and all references to sections or Exhibits in the Plan are references to the Plan's sections or Exhibits

(i)    section captions and headings are used only as convenient references and do not affect this Disclosure Statement's or the Plan's meaning.

45

SECOND AMENDED PLAN